# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BLIX INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-1869-LPS |
| | : | |
| APPLE, INC. | : | |
| | : | |
| Defendant. | : | |

John W. Shaw, Karen E. Keller, and David M. Fry, SHAW KELLER LLP, Wilmington, DE

Steven C. Cherny, Stephen R. Neuwirth, and Patrick D. Curran, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY

Adam Wolfson, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, CA

      Attorneys for Plaintiff


David E. Moore, Bindu A. Palapura, and Tracy E. Timlin, POTTER ANDERSON &CORROON LLP, Wilmington, DE

Daniel G. Swanson, Jason C. Lo, Jennifer J. Rho, and Raymond A. LaMagna, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, CA

Cynthia E. Richman and Amalia Reiss, GIBSON, DUNN &CRUTCHER LLP, Washington, DC

H. Mark Lyon, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA

Chris Wittaker, GIBSON, DUNN & CRUTCHER LLP, Irvine, CA

      Attorneys for Defendant


## <u>MEMORANDUM OPINION</u>


November 30, 2020
Wilmington, Delaware

STARK, U.S. District Judge:

## I.      INTRODUCTION

Pending before the Court is Defendant Apple, Inc.'s ("Apple" or "Defendant") motion to dismiss (D.I. 16) Plaintiff Blix, Inc.'s ("Blix" or "Plaintiff") Amended Complaint (D.I. 13) ("Compl."). For the foregoing reasons, Apple's motion will be granted in part and denied in part.

## II.     BACKGROUND

Blix is a Delaware corporation that creates various software and messaging products. (Compl. ¶¶ 1, 25) Blix owns U.S. Patent No. 9,749, 284 ("the '284 patent"), titled "Systems and Methods of Controlled Reciprocating Communication," which it used to develop its BlueMail email application. (*Id.* ¶¶ 4, 44-45)

On May 8, 2019, Apple made BlueMail available for public download in its MacOS App Store. (*Id.* ¶ 168) After informing Blix that BlueMail violated its internal guidelines, Apple removed BlueMail from the MacOS App Store on June 7, 2019. (*Id.* ¶ 189)

In this action, Blix alleges that (1) Apple's "Sign In With Apple" system infringes the '284 patent and (2) Apple's exclusion of BlueMail from Apple's MacOS App Store and iOS App Store violated Section 2 of the Sherman Act. Apple moved to dismiss Blix's Amended Complaint on the grounds that (1) the asserted patent claims are directed to ineligible subject matter and (2) Blix failed to plead plausible monopolization claims.

After Apple's motion was fully briefed (*see, e.g.*, D.I. 24), the parties filed notices of subsequent authority (D.I. 26, 28). The Court heard argument on May 18, 2020. (D.I. 29) ("Tr.") After argument, the parties filed additional notices of subsequent authority. (D.I. 30, 33, 36, 38, 40) The Court has considered all of the parties' submissions.

1

## III. LEGAL STANDARDS

### A. Motion To Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state

2

enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B.      Patent-Eligible Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one"). *See id.*  If so, the next step is to look for an "'inventive concept' – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts

3

to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character **as a whole** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

If the claims are directed to a patent eligible concept at step one, the Court need not proceed to step two. *See Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1134 (Fed. Cir. 2018).

At step two, courts must look to both the claim "as a whole" and to individual claim elements to determine whether "the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal alterations and quotation marks omitted). The "standard" step two inquiry includes consideration of whether claim elements

4

"simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not ***enough*** to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted; emphasis in original). Moreover, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Instead, the relevant question is "whether the claim limitations ***other than the invention's use of the ineligible concept*** to which it was directed were well-understood, routine and conventional." *Id.* (emphasis added).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369; *see also Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965 (Fed. Cir. 2018) ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. There are many obscure references that nonetheless qualify as prior art."). Moreover, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. For instance, in *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nevertheless determined that an ***ordered combination*** of these limitations was patent-eligible under step two. *Id.* at 1349.

5

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). Still, it is not enough just to disclose the improvement in the specification; instead, the Court's task is to "analyze the asserted claims and determine whether they *capture these improvements*." *Berkheimer*, 881 F.3d at 1369 (emphasis added). In other words, "[t]o save a patent at step two, an inventive concept must be *evident in the claims*." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the *elements of the claim* to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

"The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368.

**C.     Sherman Act Section 2**

"'Liability under § 2 [of the Sherman Act] requires (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306-07 (3d Cir. 2007) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). The second element is also known as "anticompetitive conduct." *Id.* at 308.

Monopoly power can be proven by either "direct evidence of supracompetitive prices and restricted output" or "indirect evidence" that "a firm has a dominant share in a relevant market, and that significant 'entry barriers' protect that market." *Id.* at 307. Anticompetitive conduct can be proven by showing "[c]onduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Id.* at 308. However, "[c]onduct that merely harms competitors . . . while not harming the competitive process itself, is not anticompetitive." *Id.*

## IV.    DISCUSSION

### A.    Patent-Eligibility of the Asserted Claims Under § 101

Apple argues that claim 17 of the '284 patent is representative and focuses almost exclusively on this claim in its § 101 motion (D.I. 17 at 8-9), but the Court will not treat claim 17 as representative. "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer*, 881 F.3d at 1365. Apple and Blix dispute whether claim 17 is representative, and (particularly given the parties' briefing) the Court is not in a position to conclude at this stage of the proceedings that all of the remaining claim limitations lack distinctive significance. (*See* D.I. 20 at 9-10, App'x A at 1-2, App'x B at 1-2) Accordingly, the Court will decide only the patent eligibility of claim 17, which is the focus of the parties' briefing. With respect to all other claims of the '284 patent, the parties will be directed to meet and confer and advise the Court whether it should expect an additional motion and, if so, when the parties propose to brief it. For now, the Court's ruling today applies only to claim 17.

The Court now turns to the *Alice/Mayo* two-step analysis of claim 17.

### 1.     Alice Step One

The Court agrees with Apple that claim 17 is directed to the abstract idea of using a
proxy to facilitate anonymous communications.  Blix insists that claim 17 recites a "specific and
detailed method for [] pre-interaction," but it does not identify any claim language that provides
limiting technical detail, and the Court cannot find any.  (D.I. 20 at 12)  Rather, claim 17
describes the steps of "controlled pre-interaction" in purely functional terms, and "there is
nothing in [this] claim that is directed to *how* to implement" this method.  *See Affinity Labs I*,
838 F.3d at 1258-59; '284 patent at 24:30-58.

This conclusion is supported by Apple's persuasive contention that "[t]he series of steps
covered by the asserted claims . . . could all be performed by humans without a computer."
*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016).
As Apple demonstrates, every step recited in claim 17 can be performed, for example, by a
lawyer representing a client who wishes to sell goods anonymously.  (D.I. 17 at 15-16)
Moreover, the '284 patent specification itself teaches that a "landlord renting a house" could
perform the claimed invention with conventional tools like a "public telephone number" and
"local newspaper."  '284 patent at 18:65-19:10.  While not dispositive, these real-world
comparisons are helpful to understanding that claim 17 is directed to an abstract idea.  *See
Mortgage Grader*, 811 F.3d at 1324 (stating that steps performable by humans without computer
suggest method is directed to abstract idea).

Blix's response is that the '284 patent covers "*electronic* communications networks,"
seemingly implying that this method cannot be performed without a computer (D.I. 20 at 10), but
"merely limiting the field of use of the abstract idea to a particular existing technological
environment does not render the claims any less abstract."  *Affinity Labs I,* 838 F.3d at 1259.

Thus, Apple has met its burden at step one.

### 2.    Alice Step Two

A claim directed to an abstract idea is nevertheless patent eligible if it captures an "inventive concept" beyond what was "well-understood, routine, and conventional" at the time of the invention. *Alice*, 134 S.Ct. at 2359.  This inventive concept ensures that "the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* at 2355 (internal quotation marks omitted).  It follows that "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290.

Even taking as true Blix's assertions regarding the novelty of its invention (*see* D.I. 20 at 14-16), the Court cannot find an inventive concept in claim 17.  As initial matter, the Court is not persuaded that Blix plausibly alleged an inventive concept.  While Blix's Complaint alleges, in a conclusory manner, that the '284 patent provides an "innovative improvement" and "innovative solution," in substance the Complaint simply lists the steps recited in the patent claims without alleging additional facts suggesting *why* these steps were innovative.  (D.I. 20 at 14) (citing Compl. ¶¶ 46-47)

Further, the Court disagrees with Blix that claim 17 "plainly recite[s] an inventive concept." (D.I. 20 at 14-15)  Blix lists the steps contained in claim 17 (as well as claim 27) and asserts they "create[] an innovative system," but Blix does not point to anything in these claims, or anything else in '284 patent, that could justify this conclusion.  (D.I. 20 at 16)  Blix also insists that prosecution history evidence "confirms" the inventiveness of all the asserted claims, but this evidence does not reveal a specific inventive concept contained in the asserted claims, let alone in claim 17.  (*See* D.I. 20 at 16-17)

Further, the Court's review of claim 17 does not reveal any inventive concept. Claim 17's method for "controlled pre-interaction" merely recites the conventional steps of gathering, categorizing, organizing, and comparing data. *See, e.g., Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) ("The steps in [Plaintiff's] claims (e.g., arranging, storing, retrieving, sorting, eliminating, determining) are conventional, routine, and well-known. They involve the normal, basic functions of a computer."). Finally, the Court cannot identify any inventive concept in the ordered combination of these limitations, which, taken together, consist of performing conventional steps with conventional computer components. Thus, claim 17 of the '284 patent fails Alice step two and is not eligible under § 101. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

Accordingly, the Court will grant Apple's motion to dismiss with respect to Apple's alleged infringement of claim 17.[1]

## B.    Blix's Sherman Act Section 2 Claims

### 1.    Monopoly Power

The Court agrees with Apple that Blix has failed to adequately plead direct or indirect evidence of Apple's monopoly power. Accordingly, the Court will dismiss Blix's Sherman Act claims.

---

[1] The Court has considered the Federal Circuit's recent decision in *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020), which Blix submitted to the Court and on which both parties have provided argument (*see* D.I. 38, 39). The Court believes that, at step one, it has applied "an accurate characterization of what the claims require" and has not proceeded at too "high level of abstraction." *Id.* at 1294-95. At step two, the Court believes that it (like Apple) has "meaningfully address[ed] the combination" of claim elements. *Id.* As Apple persuasively explains, while the *TecSec* claims were found to qualify for being viewed as claims directed to improving computer functionality, and providing a specific solution, the same cannot persuasively be said of claim 17 of the '284 patent. (*See* D.I. 39 at 1-3)

For direct evidence of Apple's monopoly power, Blix argues it "allege[d] that Apple prices its devices and default apps supracompetitively." (D.I. 20 at 24)  While Blix's Complaint asserts several times that Apple charges "supracompetitive prices," it does not plead any facts to support this assertion. (*See* Compl. ¶¶ 259, 261, 290)  Further, Blix argues that its allegations of Apple's "veto power over all competition" is evidence of "restricted output" (D.I 20 at 25), but allegations that Apple has the ***power*** to restrict output are not equivalent to allegations that Apple has ***actually restricted*** output.  Blix does not identify any additional facts in its Complaint that support an allegation Apple restricted output, and the Court cannot find any.  (D.I. 20 at 24; *see also* D.I. 22 at 6)  Thus, Blix has failed to allege direct evidence of monopoly power.

Blix has also failed to allege indirect evidence of monopoly power – specifically, facts supporting the conclusion that Apple has a "dominant share of the relevant market."  Blix initially argues it did not need to allege Apple's "market share for mail client apps" because "Apple . . . had veto power over ***all*** market competition."  (D.I. 20 at 25)  However, as pled here, Apple's market share is a "necessary fact[]" Blix must plead to plausibly allege Apple's monopoly power with indirect evidence. *See Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998).  Blix then suggests that its allegation that Apple "capture[d] ***additional*** market share for its own offerings" suffices (D.I. 20 at 25 n.11) (emphasis added), but this allegation is insufficient to support the conclusion that Apple possesses a ***dominant*** market share.  Finally, while Blix's Complaint alleges that "Apple has long enjoyed a dominant position" in the relevant markets, because Apple Mail is installed as the "default email client" for iOS and MacOS users (Compl. ¶¶ 93, 159), Blix did not allege any facts related to Apple's specific share of the market.  Thus, Blix has failed to plausibly allege Apple's monopoly power.

The supplemental authorities are not to the contrary. *3Shape Trios A/S v. Align Tech., Inc.*, 2020 WL 2559777 (D. Del. May 20, 2020), *R&R adopted*, C.A. No. 18-1332-LPS D.I. 86 (D. Del. Nov. 25, 2020), and *F.T.C. v. AbbVie Inc.*, 976 F.3d 327 (3d. Cir. 2020), both establish that monopoly power is proved in either of two ways: (1) directly, through "evidence of supracompetitive prices and restricted output;" or (2) indirectly, where there exists an allegation of (i) dominant market share in a (ii) relevant market coupled with (iii) the presence of entry barriers. *3Shape*, 2020 WL 2559777 at *9; *see also AbbVie*, 976 F.3d at 371-72. *3Shape* and *AbbVie* do not stand for the proposition that a plausible market allegation obviates the need for allegations of market share or the presence of entry barriers. Blix must make those allegations. The plausibility of what a relevant market is, *see Epic Games, Inc. v. Apple Inc.*, 2020 WL 5993222, at 9-12 (E.D. Pa. Oct. 9, 2020), does not mean that Blix is excused from adequately alleging market power. *See also SEI Global Servs., Inc. v. SS&C Advent*, 2020 WL 6262187, at *5-7 (E.D. Pa. 2020) (market power allegations required even if relevant market allegations are plausible). Here, then, even assuming that Blix has defined a relevant market, Blix does not articulate **why** (via market share allegations) or **how** (via entry barriers) Apple maintains market power within that market. Hence, again, Blix has failed to plausibly allege Apple's monopoly power.

Nor does Blix's proffered Staff Report of the U.S. House of Representatives Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary, entitled "Investigation of Competition in Digital Markets" (*see* D.I. 34 Ex. A) ("Report"), compel a contrary conclusion. The Report is not a binding precedent; nor does it purport to be a judicial determination. Instead, the Report itself notes that the "views and conclusions contained in the Report are staff views and do not necessarily reflect those of the

Committee on the Judiciary or any of its Members." (*Id.* at 9-10) In any event, the document is not conclusive. The Report notes that "antitrust authorities are investigating [Apple] for *potential violations* of the U.S. antitrust laws." (*Id.* at 332) (emphasis added) But more fundamentally, the Report is not part of Blix's pleadings[2] – and Blix's pleadings control.

Because Blix has failed to plausibly allege monopoly power, its antitrust claim must fail.

### 2. Anticompetitive Conduct

Even if Blix had plausibly alleged Apple's monopoly power, Blix's failure to plausibly allege Apple's anticompetitive conduct provides an independent reason to dismiss Blix's Section 2 claims. *See SEI Global Servs.*, 2020 WL 6262187 at *7-9.

Blix has not stated a claim for liability under the essential facilities doctrine because Blix's allegations, taken as true, demonstrate that the MacOS App Store is not an essential facility. Blix alleged that BlueMail (1) "achieved success on *multiple* platforms," i.e., not just on Apple's platforms and (2) was sold in the market for five years before it became available in MacOS App Store. (Compl. ¶¶ 5, 166; D.I. 22 at 14; *see also Kerwin v. Casino*, 2020 WL 1313345, at *3 (3d Cir. Mar. 18, 2020) ("Because it is feasible for [plaintiff] to do business at other venues, it cannot be said that any of the of the defendant['s] facilities are 'essential.'"))

Blix's refusal to deal theory also fails because Blix did not allege any facts "suggest[ing] [Apple's] willingness to forsake short-term profits to achieve an anticompetitive end." *Verizon*

---

[2] Blix did not ask the Court to take judicial notice of the Report. Even if it did, the Court could do no more than notice that certain statements were made; it could not at this stage accept the truth of the statements. "If a court does take judicial notice of a document in [a motion to dismiss], then it is true that the court may notice only the existence of the document, not the truth of the facts recited therein . . . ." *In re Horsehead Holding Corp. Sec. Litig.*, 2018 WL 4838234, at *10 (D. Del. Oct. 4, 2018); *see also Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (judicial notice "indicate[s] what was in the public realm at the time, not whether the contents of those articles were in fact true").

*Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).  While Blix

alleged that Apple "show[ed] a willingness to forsake short-term profits" by excluding BlueMail

(Compl. ¶ 225), it did not offer any facts suggesting that Apple earned any profits from

BlueMail.  Instead, Blix asks the Court to presume profitability from the mere fact that Apple

listed BlueMail for sale at one point (D.I. 20 at 32), but the Court will not do so because Apple

listed BlueMail for less than one month (*see* Compl. ¶¶ 168, 189), and the presumption of

profitability emerges only from evidence of a "***long-term*** business relationship." *Viamedia, Inc.*

*v. Comcast Corp.*, 951 F.3d 429, 458-59 (7th Cir. 2020) (listing "long-term business

relationship" as fact supporting inference of illegal refusal to deal in *Aspen Skiing*); *see also*

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 603 (1985) (noting that

business relationship between parties "had persisted for several years").

Blix also insists it pled Apple's "willingness to forsake short-term profits" by alleging

that "Apple's customers were *less* satisfied due to their inability to obtain BlueMail," but the

allegations Blix cites in its brief do not include facts that, if accepted as true, would support this

conclusion.  (D.I. 20 at 33) (citing Compl. ¶¶ 112, 243)  Further, even if Blix had properly

alleged that listing BlueMail for sale would "satisfy consumer demand," this allegation could not

***by itself*** give rise to a viable refusal to deal claim.  *See Aspen Skiing*, 472 U.S. at 610-11

(inference of illegal refusal to deal supported by evidence that terminated business partnership

"entailed no cost" for and "provided . . . immediate benefits" to defendant, in addition to

evidence of consumer satisfaction); *see also Viamedia*, 951 F.3d at 458-59.

Blix also argues it alleged Apple's anticompetitive conduct under the "*Kodak* aftermarket

monopolization doctrine" and an "abusing power over key distribution channels" theory (D.I. 20

at 26-27, 29-31), but neither of these gives rise to a plausible Section 2 claim.  Instead, the Court

agrees with Apple that Blix's "*Kodak* aftermarket monopolization" theory is simply another refusal to deal claim that fails for the reasons stated above. *See Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 457-58 (1991); *see also* D.I. 22 at 15. Further, the Court "decline[s] the invitation" to accept Blix's theory that Section 2 liability can arise solely from the "abuse" of distribution channels – i.e., without the bundling or exclusive dealing that gave rise to liability in *LePage's* and *Microsoft*, respectively – because it would be "a new form of antitrust liability never before recognized by [the Supreme] Court." *Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 555 U.S. 438, 457 (2009); *see also LePage's Inc. v. 3M*, 324 F.3d 141, 160-62 (3d Cir. 2003); *U.S. v. Microsoft Corp.*, 253 F.3d 34, 70-71 (D.C. Cir. 2001).

Because Blix has failed to allege any predicate anticompetitive act, its monopoly leveraging claim also fails. *See Trinko*, 540 U.S. at 415 n.4. Thus, Blix has failed to allege any anticompetitive conduct. Accordingly, it has not stated a plausible claim under Section 2 of the Sherman Act.

## V.    CONCLUSION

For the foregoing reasons, Apple's motion will be granted in part and denied in part. The dismissal of the patent infringement claim with respect to claim 17 of the '284 patent will be with prejudice. Given the Court's conclusions, amendment would be futile. The dismissal of the antitrust claim is without prejudice as the Court cannot conclude on the record before it that amendment be futile. *See generally* Fed. R. Civ. Proc. 15(a) (noting that court should "freely give leave [to amend] when justice so requires"); *see also Alivn v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("[I]t is an abuse of discretion to deny leave to amend unless plaintiff's delay

15

in seeking amendment is undue, made in bad faith, prejudicial to the opposing party, or [the proposed amendment] fails to cure [any] defect[s].").[3]

      An appropriate Order follows.

---

[3] The decision to grant Blix yet another opportunity to amend is more difficult in this case than is typical. This is because Blix has already amended its complaint once; Blix did not ask in its briefing for an opportunity to amend; and Blix did not clearly appear to seek leave to amend even during argument on the motion to dismiss (although it suggested, in responses to the Court's questions, that it could correct pleading deficiencies by amendment). The parties' dispute about the propriety of permitting another amendment is most fully developed in connection with their discussion of certain supplemental authorities. (*See* D.I. 30 at 2-3; D.I. 31 at 2-3 & n.1; D.I. 32) On the whole, given the preference in this Circuit that cases be resolved on the merits, *see, e.g.*, *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (stating "preference that cases be disposed of on the merits whenever practicable"); given that the Court cannot at this time (particularly given the briefing) determine that amendment would be futile; given that Apple will have another opportunity to try to dismiss any amended claims; and given that Blix now clearly seeks leave, the Court will err on the side of giving Blix one final opportunity to state an antitrust claim on which relief can be granted.