# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLIX INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | C.A. No. 19-1869-LPS |

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

Daniel J. Melman, Guy Yonay, Sarah Benowich, Shaoul Sussman, PEARL COHEN ZEDEK LATZER BARATZ LLP, New York, NY

Mark C. Rifkin, Thomas H. Burt, WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP, New York, NY

    Attorneys for Plaintiff


David E. Moore, Bindu A. Palapura, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Daniel G. Swanson, Jason C. Lo, Jennifer J. Rho, Raymond A. LaMagna, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, CA

Cynthia E. Richman, Amalia Reiss, GIBSON, DUNN & CRUTCHER LLP, Washington, DC

H. Mark Lyon, GIBSON, DUNN & CRUTCHER LLP, Palo Alto, CA

Chris Whittaker, GIBSON, DUNN & CRUTCHER LLP, Irvine, CA

    Attorneys for Defendant

**MEMORANDUM OPINION**

July 9, 2021
Wilmington, Delaware

*[signature]*
**STARK, U.S. District Judge:**

Pending before the Court is a renewed motion to dismiss Blix Inc.'s ("Blix" or "Plaintiff") antitrust allegations against Defendant Apple, Inc. ("Apple" or "Defendant"). (D.I. 70) The operative complaint is Blix's Second Amended Complaint. (D.I. 59) (hereinafter, "Complaint" or "Cmplt.") Previous iterations alleged infringement of U.S. Patent No. 9,749,284 (the "'284 patent") as well as certain antitrust claims (D.I. 13), which the Court dismissed in a November 30, 2020 memorandum opinion (D.I. 42), which also granted leave to file the new Complaint (D.I. 59). Following oral argument on March 12, 2021, the Court dismissed all of Blix's patent infringement allegations due to the patent-in-suit being directed to patent-ineligible subject matter under 35 U.S.C. § 101. (D.I. 69)

As the parties note, the operative Complaint presents new and different antitrust allegations and theories of liability than appeared in the earlier complaints. (*See* D.I. 71 at 1-2; D.I. 74 at 1) On April 15, 2021, Apple filed a motion to dismiss these antitrust claims. (D.I. 70) The motion was fully briefed and then, on June 8, 2021, argued to the Court. (*See* D.I. 71, 74, 75; *see also* D.I. 78 ("Tr.")) For the reasons stated below, the Court will grant Apple's motion.

## I.  LEGAL STANDARDS

### A.  Motion to Dismiss

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the

1

complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

B.  **Antitrust Standing**

As the Third Circuit explained in *Pace Electronics, Inc. v. Canon Computer Systems, Inc.*, 213 F.3d 118, 120 (3d Cir. 2000):

> To state a claim for damages under section 4 of the Clayton Act, 15 U.S.C. § 15, a plaintiff must allege more than that it has suffered an injury causally linked to a violation of the antitrust laws. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S. Ct. 690, 50 L.Ed.2d 701 (1977). In addition, it must allege

antitrust injury, "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.*

C.   **Sherman Act Section 2**

The Third Circuit's opinion in *Broadcom Corp. v. Qualcomm Inc.* sets out the standards for analysis of a Sherman Act Section 2 claim:

> Section 2 of the Sherman Act, in what we have called "sweeping language," makes it unlawful to monopolize, attempt to monopolize, or conspire to monopolize, interstate or international commerce. It is, we have observed, "the provision of the antitrust laws designed to curb the excesses of monopolists and near-monopolists." *LePage's Inc. v. 3M*, 324 F.3d 141, 169 (3d Cir. 2003) (en banc). Liability under § 2 requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). . . .
>
> The existence of monopoly power may be proven through direct evidence of supracompetitive prices and restricted output. *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001) (en banc); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). It may also be inferred from the structure and composition of the relevant market. *Harrison Aire*, 423 F.3d at 381; *Microsoft*, 253 F.3d at 51. . . .
>
> The second element of a monopolization claim under § 2 requires the willful acquisition or maintenance of monopoly power. As this element makes clear, the acquisition or possession of monopoly power must be accompanied by some anticompetitive conduct on the part of the possessor. *Verizon Commcn's Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004). Anticompetitive conduct may take a variety of forms, but it is generally defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits. *LePage's*, 324 F.3d at 147. Conduct that impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way may be deemed anticompetitive. *Aspen Skiing Co. v. Aspen*

3

> *Highlands Skiing Corp.*, 472 U.S. 585, 604-05 & n. 32, 105 S.Ct.
> 2847, 86 L.Ed.2d 467 (1985). Conduct that merely harms
> competitors, however, while not harming the competitive process
> itself, is not anticompetitive. *See Brooke Group Ltd. v. Brown &
> Williamson Tobacco Corp.*, 509 U.S. 209, 224, 113 S.Ct. 2578,
> 125 L.Ed.2d 168 (1993).

501 F.3d 297, 306-08 (3d Cir. 2007) (internal footnote omitted).

### D. Tying

Tying involves conditioning the sale of one good on the purchase of another, separate good. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 510 (3d Cir. 1998). "The antitrust concern over tying arrangements arises when the seller can exploit its market power in the tying market to force buyers to purchase the tied product which they otherwise would not, thereby restraining competition in the tied product market." *Id.* In proving a tying arrangement, a plaintiff must allege: "(1) a defendant seller ties two distinct products; (2) the seller possesses market power in the tying product market; and (3) a substantial amount of interstate commerce is affected." *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 477 (3d Cir. 1992).

## II. DISCUSSION

### A. Monopoly Maintenance

Blix's amended antitrust allegations do not sufficiently plead the existence of an unlawful maintenance of monopoly in violation of Section 2 of the Sherman Act. Liability under Section 2 requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Apple assumes, only for purposes of this motion,

that Blix has sufficiently alleged monopoly power in the market for mobile operating systems ("OS"), satisfying the first requirement. (D.I. 71 at 8) But Apple challenges the sufficiency of Blix's allegations relating to the second requirement. The Court agrees with Apple that Blix has failed with respect to this issue.

As an initial matter, the Court observes that a fundamental premise of Blix's monopoly maintenance claim is that Apple infringes Blix's patent. That is, Blix contends that Apple has stolen and copied Blix's patented technology as part of Apple's effort to maintain monopoly power. (*See, e.g.*, Cmplt. ¶¶ 16, 226, 350-51) Because the Court has dismissed the patent infringement claims, the patent infringement component of the monopoly maintenance claims cannot constitute improper conduct. Indeed, as Blix's Complaint expressly recognizes: "Apple is free to offer its competing Consumer SSO solution, as long as that product does not infringe on the intellectual property of Blix." (*Id.* ¶ 249) The dismissal of the patent infringement claim, therefore, eliminates at least a substantial portion of Blix's monopoly maintenance allegations.[1]

The core of Blix's allegation seems to be that Apple has constructed a "moat" around "its user base by a series of actions that, individually and especially together, make it difficult and expensive for Apple iOS users to leave the coordinated technological ecosystem;" this moat is allegedly "grounded and protected by [Apple's] monopoly power in its OS." (D.I. 74 at 13) Blix

---

[1] Blix also alleges what it calls "Sherlocking," which it describes as Apple's "require[ment] that every application made available to Apple end users has to be shown to [Apple] first," so that Apple can review the application and "decide short of patent infringement, do they like an idea. If they like an idea that someone else had first, they don't have to wait and roll that idea out after the application rolls it out" but can, instead, beat the innovative application developer to the market. (Tr. at 33-34) The Court agrees with Apple that Blix has not shown, in the context of the Complaint, how "Sherlocking" is different from patent infringement or how it provides a cognizable basis for alleging competitive harm. (*See id.* at 13-14, 59; *see also id.* at 49-50) More generally, Blix has failed to explain why the alleged "Sherlocking" – which, again, here does not constitute patent infringement – should be viewed as willful maintenance of monopoly power as opposed to the exercise of business acumen. *See generally Grinnell*, 384 U.S. at 570-71.

points to a variety of actions that Apple has purportedly taken to maintain its monopoly, including pricing its hardware at a high level, offering proprietary "family" applications, controlling iOS application development and application payment processing, and stealing others' ideas. (*Id.* at 13-19) For example, Blix alleges that Apple took advantage of its structural advantages to steal from Blix's BlueMail product the idea underlying Sign In With Apple, a consumer single-sign-on ("SSO") option. (*Id.* at 21-24) In implementing Sign In With Apple, Apple then forced Blix (and other developers) to offer Sign In With Apple as an alternative to other SSOs, thereby "inject[ing] itself as an intermediary between the developer and the user of its app." (*Id.* at 23)

As support for its contentions, Blix unpersuasively draws comparisons to the D.C. Circuit's decision in *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001). In *Microsoft*, the D.C. Circuit held that "[i]f a consumer could have access to the applications he desired – regardless of the operating system he uses – simply by installing a particular browser on his computer, then he would no longer feel compelled to select Windows in order to have access to those applications; he could select an operating system other than Windows based solely upon its quality and price. In other words, the market for operating systems would be competitive." *Id.* at 60. There, in squashing the competitive threats posed by emerging middleware competitors in the *internet browser market*, Microsoft committed actionable anticompetitive conduct based on its existing monopoly in the *operating system market*, and the two markets were interrelated. *See id.*

Here, Blix suggests that Apple is doing something similar to Microsoft: "work[ing] to stuff Plaintiff's technology before it gets a foothold, so as to prevent competition that would erode Apple's monopoly." (D.I. 74 at 9) Blix, however, has not alleged (nor explained) how Apple's requirement to offer Sign In With Apple means that it is eliminating competition in any market. Blix does not explain how Apple's requirement to offer Sign In With Apple restricts competition in

6

***the mobile operating system market***, and it appears to be undisputed that the requirement to offer Sign In With Apple actually expands consumer choice in the ***SSO market***. While Blix views its offering as "a maverick middleware product that poses a fundamental threat to the iOS monopoly in ways that other Consumer SSOs do not" (D.I. 74 at 23), its Complaint fails to adequately and plausibly allege how any action Apple is allegedly taking is harming competition.

If Blix's allegation is that Apple is maintaining its OS monopoly by squashing competitive threats (specifically, Blix) in the SSO market, then Blix has not adequately pled such a claim. Apple's current policy of requiring Sign In With Apple whenever any SSO product is offered permits new competitors and competition (including Blix) because it does ***not*** foreclose the use of other SSOs. Allowing competition is the opposite of unlawfully constraining competition, so, again, Blix has failed to state a claim.

In making its arguments, Blix makes another unpersuasive analogy, to *Roxul USA, Inc. v. Armstrong World Industries, Inc.*, 2019 WL 1109868, at *11 (D. Del. Mar. 8, 2019). In *Roxul*, the Court found anticompetitive effect from an exclusive dealing arrangement, which "prevent[ed] a 'maverick'" from ever "achieving a footing in the market." *Id.* Here, by contrast, there is no exclusive dealing arrangement. To the contrary, Apple makes implementation of Sign In With Apple voluntary: developers may choose to implement no SSO at all, to implement only Sign In With Apple, or to implement Sign In With Apple in conjunction with other SSOs, such as Google or Facebook. (D.I. 59 ¶ 244) The only thing a developer is not permitted to do is to offer one or more SSOs without also offering Apple's SSO. Clearly, this is not an exclusive dealing arrangement.

Blix also attempts to plead its claim based on what it labels a "sand in the gears" theory. (*See, e.g.*, D.I. 74 at 19-21) These allegations do not survive the motion to dismiss, for the reasons

7

explained by Apple. (*See, e.g.*, Tr. at 15-17) Among other things, the Complaint fails to adequately and plausibly allege that Apple has thrown "sand in the gears" of competition as opposed to just in the gears of a single competitor. Furthermore, the alleged "sand" thrown by Apple at Blix relates to Blix's BlueMail application, which was the focus of the first two complaints, and with respect to which the Court granted Apple's earlier motion to dismiss. (*See generally* D.I. 42 at 14-15) Blix has provided no persuasive reason why the Court should view these allegations as any less deficient in connection with the operative Complaint.

Having found that Blix's claim fails to adequately plead a Section 2 claim on the merits, the Court need not address the parties' arguments as to whether the claim should also be dismissed for lack of antitrust standing.

### B. Tying[2]

Blix's tying allegations arise under both Sections 1 and 2 of the Sherman Act. (D.I. 59 at 91) For the reasons already given, Blix has failed to allege conduct making out a viable Section 2 monopoly maintenance claim, so any tying claim predicated on the deficient Section 2 claim must also fail. With respect to Section 1, the Court concludes that Blix has also failed to adequately allege the existence of an unlawful tying arrangement.

Noticeably absent from Blix's allegations are facts that would suffice to establish the existence of a tying arrangement. "[A] tying arrangement may be defined as an agreement by a party to sell one product [or service] but only on the condition that the buyer also purchases a different (or tied) product [or service], or at least agrees that he will not purchase that product [or service] from any other supplier." *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 397 (3d

---

[2] The parties agree that the tying claim must be considered under the rule of reason. (*See* D.I. 74 at 25; Tr. at 6-7; *see also Microsoft*, 253 F.3d at 84)

Cir. 2016). No such arrangement is present here.

Blix points to the tying product as iOS, within the mobile OS market. (D.I. 59 ¶ 360) The tied product is Sign In With Apple, in the consumer SSO market. (*Id.*) There are no facts, however, from which it may be plausibly inferred that Apple ties purchases of Sign In With Apple to purchases of iOS. There is no requirement that purchasers of Apple devices running iOS implement Sign In With Apple. Nor is there any allegation that developers must purchase iOS as a condition of implementing Sign In With Apple. (*See* D.I. 71 at 21) If, as the Complaint seems to allege, Sign In With Apple is not always implemented in conjunction with purchase of iOS – because, among other reasons, developers do not purchase iOS – there is no tie.

As Apple has further explained, Blix's allegations indicate that many applications do not require any sign in at all. (*See* Tr. at 8) Those applications that do require a sign in may require an application-specific sign in instead of an SSO. (*See id.* at 8-9) It is only when the application offers the ***additional choice*** of a single sign in that the application developer is required to ***also offer*** Sign In With Apple as a choice (a free choice). (*See id.* at 9) In none of this, again, is there an adequate and plausible allegation that Apple is coercing anyone to buy Sign In With Apple as a condition of buying mobile iOS. (*See generally* Tr. at 30) (Blix contending that coercion occurs not at consumer level, but "at the developer level") There is no sufficient allegation of an improper tying arrangement.

Apple points to other deficiencies in Blix's tying claim, such as the insufficiency of the allegations of any restraint of trade in the allegedly tied SSO market. (*See, e.g.*, Tr. at 7-8, 11-12) Given the Court's conclusions as already explained, the Court need not determine if there are additional dispositive failings in the Complaint.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Apple's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 70) As the Court is now dismissing Blix's third complaint, and Blix has been provided multiple opportunities to try to plead its claims, today's dismissal is with prejudice. The Clerk of Court will be directed to close this case. An appropriate order follows.[3]

---

[3] Blix suggests that it should be given yet another attempt to amend its pleadings because of new information. (Tr. at 41-42) Even accepting this contention, Blix has had multiple opportunities to state an antitrust claim (or patent claim) and has repeatedly failed. Blix has provided the Court no basis to conclude that a fourth complaint would be any more likely to state a claim on which relief may be granted. The Court concludes, thus, that amendment would be futile.